**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **CRIM. NO. RDB-06-0309** |
| **JAMES DINKINS,** | **UNDER SEAL** |
| **Defendant** | |

### RESPONSE TO DEFENDANT'S MOTION FOR SENTENCING REDUCTION

The United States of America, by counsel, responds to the above-captioned defendant's motion for reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), as well as related motions and supplements.  ECF 638, 642, 644, 645, 647, 648, 650.  For the reasons discussed herein, the Court should deny the motions.

### INTRODUCTION

The defendant has filed several motions and supplements that the government will endeavor to address herein.  From the government's reading of the PACER docket, the following motions and supplements have been filed since the Court's previous denial of the defendant's motion for reconsideration of his first § 3582(c)(1)(A) request for reduction of sentence:

In ECF 638, the defendant moved for compassionate release on the grounds of his health conditions, his life expectancy, his educational and rehabilitative accomplishments, and his experiences during the COVID-19 pandemic.  ECF 638 at 4.[1]

---

[1]     The defendant expounded on his health claims in ECF 641, a "judiciary notice," and ECF 649, a "motion to expedite" his 18 U.S.C. §3582(c)(1)(A) request.  The arguments made in ECF 641 and 649 concerning the defendant's health are similar to the other health-related claims he has made.

In ECF 642, the defendant argued that he is entitled to a reduction of sentence due to an alleged error in the jury instructions in his case.  The government addresses that claim in footnote 5 of this memorandum.

In ECF 645, a "supplemental motion / emergency request for compassionate release," the defendant sought release based on the COVID-19 pandemic █████████████████████████ ███████████ and his personal health issues, includin ██████████████████████████████████ ████████████████████ █████████████████████████████████████ *Id.* at 1.

In ECF 647, a "supplemental" memorandum, the defendant argued for a reduction of sentence based on his health conditions, COVID-19, the length of his sentence, and the degree to which he has changed as a person since sentencing. ███████████████████████████████████████ ███████████ CF 647 at 5.

In ECF 644, 648, and 650, the defendant requested appointment of counsel for his motion.

## BACKGROUND

The defendant is serving a sentence of life imprisonment plus forty years for murder, witness retaliation, drug-trafficking, and firearms offenses.  The facts of the case are as follows[2]: James Dinkins served as an enforcer for a drug-trafficking organization known as "Special" and committed murders for hire.  The trial evidence established that Dinkins murdered or attempted to murder the following people during his time as a Special organization hit man:

---

[2]     The summary is taken substantially from the Court's memorandum opinion denying the defendant's first 18 U.S.C. § 3582(c)(1)(A) motion, *United States v. Dinkins*, 2021 WL 229663, at * 1 (D. Md. Jan. 22, 2021) (Bennett, J.).  The facts of the defendant's crimes were also detailed in the published opinion by the United States Court of Appeals for the Fourth Circuit affirming the convictions of the defendant and his co-defendants.  *United States v. James Dinkins, Melvin Gilbert, and Darron Goods*, 691 F.3d 358 (4th Cir. 2012).  *See also* Government's Response to Defendant's First 18 U.S.C. §3582(c)(1)(A) Motion, at 1-6.

- **Shannon Jemmison – Dinkins Murdered Her Because She Was Believed to be an Informant**:  In 2005, Dinkins agreed to kill this victim because she was believed to be an informant.  Dinkins committed the murder for several thousand dollars.  *See United States v. Dinkins*, 691 F.3d 358, 363 (4th Cir. 2012)

- **John Dowery – Dinkins Attempted to Murder Him Because He Was a Witness in a State Murder Trial**:  On October 19, 2005, Dinkins attempted to kill this victim because he was a witness for an upcoming state murder trial.  *Id.*  Dinkins and another member of Special shot the witness several times, but the witness survived[3] that shooting.  *Id.*  Dinkins later lamented that the murder had not been successful and was heard to say "[w]e have to go to the hospital to finish him off." *Id.*

- **Michael Bryant – Dinkins Murdered Him in the Aftermath of the Attempted Murder of John Dowery**: On November 10, 2005, Dinkins murdered Michael Bryant over a dispute between the two.  *Id.* at 364-65.

The defendant filed an earlier § 3582(c)(1)(A) motion for reduction of sentence, docketed on June 23, 2020.  ECF 576.  The government filed a response in opposition.  ECF 587, 588.  The Court denied that first motion on January 22, 2021.  *Dinkins*, 2021 WL 229663, at * 1.  In that first motion, the government did not oppose a finding of extraordinary and compelling circumstances but opposed the motion on 18 U.S.C. § 3553(a) grounds.  Accordingly, the Court accepted that the "extraordinary and compelling" issue was not in dispute.  *Id.*  However, the Court denied that motion on § 3553(a) grounds, noting the following:

---

[3]     Other members of the Special heroin organization ultimately murdered John Dowery on a later date.

Looking to each of these factors, this Court finds that a reduction in Dinkins' sentence is inappropriate. As the Government notes, "[i]t is difficult to imagine a defendant who represents a more obvious danger to the community than Mr. Dinkins." (ECF No. 587 at 14 *SEALED*.) Dinkins planned and participated in murders and attempted murders, operating as a hitman for a drug-trafficking organization. Any sentence in this case must send a message to potential offenders that acts of murder and acts of witness retaliation, which threaten the administration of justice, will be justly punished. The seriousness of the numerous crimes committed by Dinkins warrants the sentence imposed, and a reduction in that sentence would be inconsistent with the above-listed factors. While Dinkins' medical conditions are serious, at this time it does not appear that any of his conditions are life-threatening,[4] and he is receiving close attention for his conditions from the BOP. (Ex. 1, ECF No. 587-1 *SEALED*.)

*Id.* at *3.

The defendant filed a motion for reconsideration (ECF 610), which the Court denied (ECF 634). *United States v. Dinkins*, 2021 WL 6064851, at *1 (D. Md. Dec. 22, 2021) (Bennett, J.). In that denial, the Court reaffirmed its previous observations about the seriousness of the defendant's crimes and the danger he posed to the community:

This Court determined that Dinkins represents a grave danger to the community. Dinkins planned and participated in murders and attempted murders, operating as a hitman for a drug-trafficking organization. The nature and seriousness of his offenses warrant the sentence he is currently serving. A lesser sentence would not provide just punishment or promote respect for the law. This Court concludes that its earlier analysis of the § 3553(a) factors is correct.

*Id.* at *1.

In the current motions and supplements, the defendant again seeks early release pursuant to the compassionate release provisions of 18 U.S.C. § 3582(c)(1)(A). As it did in its Response to the first §3582(c)(1) motion, the government does not contest that the defendant has demonstrated

health issues sufficient for the Court to *consider* the request. However, the government opposes a reduction of the defendant's sentence based on the 18 U.S.C. § 3553(a) factors.

**ARGUMENT**

To secure a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), a defendant must exhaust administrative remedies in the Federal Bureau of Prisons. Following exhaustion, a defendant must show: extraordinary and compelling reasons warranting a reduction; and that the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of a reduction of sentence. *See United States v. Holmes*, 2022 WL 16775715, at *1 (D. Md. Nov. 8, 2022) (Bennett, J.). The defendant has the burden of showing his entitlement to relief. *See United States v. Gallagher*, 2022 WL 17833432, at *6 (D. Md. Dec. 21, 2022) (Hollander, J.).

Here, the defendant appears to have satisfied the administrative requirements for this request. Therefore, the government will address the merits of the motion.

## I.      EXTRAORDINARY AND COMPELLING REASONS

The defendant's current motions are mostly based on his health conditions (along with some other arguments found in his various filings). The defendant reports a number of serious health conditions, including ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮n these particular facts, the government does not contest that the defendant has shown extraordinary and compelling reasons for a reduction of sentence based on his health conditions.

The government will address the defendant's health issues in the section on the 18 U.S.C. §3553(a) factors.[5]

## II.   THE 18 U.S.C. § 3553(a) FACTORS DO NOT FAVOR A REDUCTION OF SENTENCE, EVEN WHEN CONSIDERED IN CONJUNCTION WITH THE DEFENDANT'S HEALTH AND OTHER CLAIMS.

Even if a defendant has met the threshold requirements for compassionate release, the Court must still conduct an individualized assessment as to whether a reduction is warranted according to the factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A); *Gill v. United States*, 2022 WL 17488953, at *5 (D. Md. Dec. 7, 2022) (Bennett, J.). Even when a defendant has shown eligibility, reduction of a sentence is still a "rare" remedy. *See United States v. Williams*, 2023 WL 4490325, at *8 (D. Md. July 11, 2023).

Section 3553(a) provides that "[t]he court shall impose a sentence sufficient, but not greater than necessary," to comply with the purposes of sentencing described in § 3553(a)(2). Analysis under § 3553(a) also includes consideration of factors including: (1) the defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative

---

[5]     Because the government is not contesting the extraordinary and compelling reasons prong of § 3582(c)(1)(A), the government will not discuss each and every claim made in the defendant's filings for that prong. The government will address some of those arguments to the extent they are relevant to the § 3553(a) factors. One issue that the government will discuss here is the defendant's claim that the jury instructions in his trial were incorrect on the issue of Maryland murder. *See* ECF 642 at 1-2. The Court should reject that claim. First, a complaint about the jury instructions would be relevant (if at all) to the underlying conviction, not a reduction of sentence under the compassionate release statute, and would therefore not be a basis for § 3582(c)(1)(A) relief. *See United States v. Ferguson*, 55 F.4th 262, 272 (4th Cir. 2022). Second, the defendant's jury instruction claim is vague, lacks any analysis, and lacks any citation to the record. As such, the jury instruction claim fails.

services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. *See Gill*, 2022 WL 17488953, at *5.

In this case, the § 3553(a) factors do not support a sentence reduction. The government will consider the prevailing § 3553(a) factors in turn, including those corresponding to the defendant's extraordinary and compelling reasons arguments (particularly his health).

> **A.   The Nature and Circumstances of the Offense, and the Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense (18 U.S.C. §3553(a)(1), (a)(2)(A))**

The defendant made a business of murdering witnesses and other adversaries as a hit man for the "Special" heroin organization. Those facts are fundamental to the need for the current sentence to be maintained.

The defendant does not mention his victims' names and does not go into any detail about his crimes.[6] But the names of the human beings whose lives were taken from the defendant's conduct should not be forgotten. Nothing mitigates the seriousness of these crimes, the gravity of the offenses against society, or the impact on the lives of the victims and their families.

Not surprisingly, the defendant wishes the focus of this case to be on his own experiences, his own health, and his own challenges. The defendant's health issues are relevant - the government does not deny that. But the crimes committed against the defendant's victims are at *least* as relevant. Those victims were Shannon Jemmison, John Dowery, and Michael Bryant.

However the Court resolves the defendant's motions, the sentence must reflect the taking

---

[6]     As discussed below, the defendant states that he accepts responsibility for and expresses remorse for his crimes. ECF 647 at 1-2, 18. The government hopes that is true. But the defendant's discussions of remorse and responsibility are quite vague and contain little reference to the substantive facts of his case. Additionally, the overall record is uneven as to whether the defendant has accepted responsibility or not. *See Dinkins*, 2021 WL 6064851, at *1 n.2 (in denial of motion for reconsideration, noting defendant's claim of actual innocence).

of those lives.  It must reflect that the defendant took those lives for money.  It must reflect that the defendant sought to take two of those lives because they were witnesses.

**B.** **The History and Characteristics of the Defendant (18 U.S.C. §3553(a)(1))**

Many of the defendant's arguments for extraordinary and compelling reasons, particularly as to his health, are also relevant to his history and characteristics, a § 3553(a) factor.  Those factors do not support release.  They do not mitigate the seriousness of the underlying crimes, they do not provide a substantial basis for the Court to find that the defendant is not a continuing danger to the community, and they do not demonstrate any justification or need for the defendant to be released.

1.   <u>Defendant's Health Conditions</u>

As serious as the defendant's health conditions are, those conditions do not change the fact that this is a case of witness murder.















[12]   Based on the defendant's disciplinary record (Exhibit 4) that appears to have been for a "possessing a hazardous tool" violation, involving a cellphone, arising from a July 25, 2023 incident (hearing date September 20, 2023).



Several conclusions can be drawn from the medical records and information provided by

BOP:

Third, the defendant is in an environment in which he has immediate and continuous access

to a quality of medical care that seems to exceed what many citizens could expect.  He is housed

at a federal medical center.  The defendant's regular housing unit is in the same building as the

Health Services Department at that facility.  Exhibit 2 ¶ 10 (Declaration).

In short, the defendant lives in a place

surrounded by medical professionals who are familiar with his history and trained and equipped to provide a high quality of medical care.

Fourth, and relatedly, there is no evidence to support the defendant's claim that he would receive superior care if he were released. *See* ECF 647 at 9-10. There is no reason to believe that

not housed in a BOP federal medical center. The defendant's argument here is based only on a vague sense that he would be able to select his own medical provider if released. Obviously, that would be true of any BOP prisoner. Regardless of whether the providers are of his personal choice or not, the defendant has regular, close access to effective health care.



In sum, the defendant has serious health conditions, but he is receiving appropriate, quality care for his conditions ██████████████████████████████████████ FMC Devens appears to provide an environment in which the defendant has access to regular care, ████████████████████████████████████ nd care for urgent emergency situations as they arise.  In effect, the defendant lives in a medical environment that is well-suited to his health issues.  Given the great seriousness of his crime of conviction, other aspects of his history, and the high quality of medical care available to him, there is no reason to reduce the defendant's sentence based on his health.

        2.      <u>COVID-19</u>

The defendant references the COVID-19 pandemic and the conditions of confinement he has experienced.  ECF 638 at 5-6; ECF 647 at 14.



FMC Devens, where the defendant is housed, currently has zero COVID-19 positive inmates.  The current status of FMC Devens from the BOP's COVID-19 resource webpage is below:

| Facility Name | City | State | Zip Code | Operational Level |
|---|---|---|---|---|
| Devens FMC | Ayer | MA | 01432 | 1 |

| Staff Vaccinated | Inmates Vaccinated | Inmates Completed Tests | Inmates Pending Tests | Inmates Tested Positive | Staff Positive | Staff Recovered | Staff Deaths | Inmates Positive | Inmates Recovered | Inmates Deaths |
|---|---|---|---|---|---|---|---|---|---|---|
| 368 | 972 | 796 | 1 | 434 | 1 | 314 | 0 | 0 | 326 | 15 |

https://www.bop.gov/coronavirus/covid19_statistics.html (visited October 13, 2023).

Moreover, as discussed, the defendant is housed in a medical provider environment with optimum access to medical care, be it primary, chronic, emergency, etc.  COVID-19, whether as part of the defendant's medical issues or by itself, does not warrant release.

did not eliminate the chance of the defendant contracting COVID-19, vaccination reduces such a risk and perhaps more importantly, reduces the probability of COVID-19 hospitalization and death.  *See* https://www.cdc.gov/media/releases/2023/p0912-COVID-19-Vaccine.html#:~:text=Vaccination%20remains%20the%20best%20protection,last%20for%20an%20extended%20duration (visited October 13, 2023).

3.    <u>Rehabilitation and Age</u>

The defendant points to his rehabilitative efforts and to his age.  ECF 647 at 4-5.  In short, the defendant claims that the crimes were long ago, he is older and more mature, and that his personal accomplishments and rehabilitative efforts demonstrate that he is a changed person.

Any efforts by a BOP inmate to improve himself through education and programming should be encouraged.  A person who pursues such improvement even in the face of a life prison sentence is particularly worthy of praise.  One hopes that the defendant will continue to improve himself and will continue to grow as a person.  But for several reasons, the defendant's BOP efforts and his increase in age do not warrant a reduction in sentence.

First, the defendant's greater age does not seem to be a particularly material factor here. Obviously, at age 50-51, the defendant is much older than he was when he committed the instant offenses (2004-2005).  But the defendant was already over 30 years old when he committed his murders.  Although courts have recognized youth as mitigating in some instances, it presses the limits of such an argument for a person to blame his youth on crimes committed past the age of 30.[14]  The defendant was an adult when he committed his crimes.  Age is not a mitigator here.

Second, the defendant's rehabilitative efforts are impressive, but they do not mitigate the seriousness of his crime in any way.

Finally, the defendant's repeated violations of BOP regulations, including violent infractions, powerfully rebuts his claim of rehabilitation.  The defendant's disciplinary history (Exhibit 4) is discussed in the next section.

---

[14]    The government is aware of compassionate release cases in which defendants have pointed to studies that human brain development continues all the way to age 30.  *See, e.g., United States v. Ramsay*, 538 F.Supp.3d 407, 417-18 (S.D.N.Y. 2021).  Dinkins's argument about crimes he committed past the age of 30 press the limits even of those arguments.

4.     Defendant's Federal Bureau of Prisons Disciplinary Record

The defendant's BOP disciplinary history substantially rebuts his arguments for reduction of sentence.  The BOP record demonstrates a pattern consistent with his prior criminal history (discussed below): rule-breaking and periodic violence.

The defendant's BOP disciplinary history is attached as Exhibit 4.  The disciplinary record is lengthy and includes serious violations, including for making threats and for assaults:

- On July 25, 2023, "possessing a hazardous tool" – specifically, the defendant admitted to possessing a cellphone;

- On October 3, 2022, threatening bodily harm;

- On June 28, 2022, being insolent to a staff member;

- On September 20, 2021, assaulting without serious injury;

- On August 23, 2021, refusing to obey an order;

- On May 8, 2021, giving or accepting money without authorization;

- On April 20, 2021, refusing to obey an order and interfering with taking count;

- On July 24, 2018, lying or falsifying statement;

- On December 19, 2017, refusing to obey an order;

- On January 20, 2013, interfering with taking count;

- On March 14, 2012, fighting with another person; and

- On October 17, 2011, possessing a non-hazardous tool.

Given the nature of the crimes at issue here, a court considering a reduction of the defendant's sentence would likely require a perfect or near-perfect disciplinary record (at a minimum).  The defendant's record is far from perfect; it includes multiple serious violations.

Particularly troubling is that the defendant has continued to violate BOP rules even while seeking sentencing reductions from this Court. The defendant's first § 3582(c)(1)(A) motion was docketed on June 23, 2020. ECF 576. Additional motions and supplements have been filed subsequent to that. Yet since beginning his efforts to reduce his sentence, the defendant has incurred seven new violations. Further, those violations have been for serious issues (making a threat, assault, possessing a contraband cellphone). A person seeking a reduction of sentence should be expected to pursue a perfect record and to comply with every rule. The defendant has not done so.[15]

### 5.   Defendant's Criminal History

The defendant's criminal history, while older at this point, certainly does not instill confidence about the wisdom of a sentencing reduction or whether the defendant will pose a danger to others upon release. It includes two armed robbery cases in Anne Arundel County in 1993, a 1991 handgun conviction, and a 1990 robbery conviction. *See* PSR at ¶¶ 11-14.

The government recognizes that the criminal convictions are dated. The age of the defendant's prior convictions might matter more if the defendant had a strong record of good behavior in prison. However, as discussed in the preceding section, the defendant has a poor record of BOP behavior. Taken together, the defendant's criminal record and BOP record show a pattern of rule-breaking (often with violence) spanning some 33 years, from the 1990 robbery conviction

---

[15]     The defendant argues that the Court should consider not just the time and circumstances of his crimes, but also the defendant as he is today. ECF 647 at 1-3. However, the BOP disciplinary records show that the defendant *continues* to engage in poor decision-making, violations of rules, and even violence. The government agrees that the Court should consider the defendant as he stands today (*as well as* his past history and the crimes he has committed against others). Unfortunately, the defendant's recent conduct does not support his motion.

all the way up to the July 25, 2023 cell phone incident, just a few months ago.  Exhibit 4 at 1.  Such a history does not support a sentencing reduction.

      **C.**      **The Need for the Sentence to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public from Further Crimes of the Defendant.**

This is a witness murder case.  There are overwhelming needs for the sentence to support relevant sentencing purposes.  As it said during its original Response (at 18-19), the government believes that the current sentence properly protects the public from further crimes of the defendant and sends a necessary message of general deterrence for a crime involving witness murder.  18 U.S.C. § 3553(a)(2)(B), (C).  As this Court stated in denying the defendant's earlier motions, given the gravity of the crimes, the imposed sentence is necessary in order to provide just punishment for the offense and to promote respect for the law.  *Dinkins*, 2021 WL 6064851, at *1.

The government has considered the defendant's health issues.  As serious as they are, they do not support a reduction of sentence when considered with the other §3553(a) factors.  The defendant's health is being appropriately, reasonably attended to in the federal medical center where is he housed.  Furthermore, the defendant's case for release is greatly weakened by his continued serious violations of BOP regulations.

The Court's observations in its denial of the defendant's first § 3582(c)(1)(1) motion and motion to reconsider remain correct.  The defendant murdered and attempted to murder people because they were witnesses, and the sentence must therefore "send a message to potential offenders that acts of murder and acts of witness retaliation, which threaten the administration of justice, will be justly punished."  *Dinkins*, 2021 WL 229663, at *3.  Given his crimes, the defendant represents a "grave danger to the community" and the "nature and seriousness of his offenses warrant the sentence he is currently serving.  A lesser sentence would not provide just punishment or promote respect for the law."  *Dinkins*, 2021 WL 6064851, at *1.

**III.    THE DEFENDANT HAS NOT DEMONSTRATED THAT HE IS ENTITLED TO THE APPOINTMENT OF COUNSEL.**

The defendant seeks the appointment of counsel in his case.  ECF 644, 648, 650.  There is no general constitutional right to appointed counsel in post-conviction proceedings.  *See United States v. Jones*, 2021 WL 2805947, at *4 (D. Md. Jul. 6, 2021) (Bennett, J.) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)).  Courts have the discretion to appoint counsel in such cases if the "interests of justice so require."  *Id.*  The defendant has not established that any interests of justice support the appointment of counsel.  As discussed above, the government does not contest that the defendant's health conditions satisfy the first prong of §3582(c)(1)(A), but the 18 U.S.C. §3553(a) factors do not, and the defendant has not provided any sound basis for the Court to revisit its previous denial of his motions.  Therefore, the defendant has not shown that the interests of justice support the appointment of counsel.

## CONCLUSION

The government respectfully requests that the Court deny the defendant's motion for a sentence reduction.

Respectfully submitted,

Erek L. Barron
United States Attorney

By:_____/s/_____
Michael C. Hanlon
Assistant United States Attorney

36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201
410-209-4895
Michael.hanlon@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Motion will be sent by first class mail to:

> James Dinkins, pro se
> Reg. No. 05235-748
> FMC Devens
> FEDERAL MEDICAL CENTER
> P.O. BOX 879
> AYER, MA  01432

> _____/s/_____
> Michael C. Hanlon
> Assistant United States Attorney